1                **UNITED STATES DISTRICT COURT**
               **EASTERN DISTRICT OF MISSOURI**

2

3 UNITED STATES OF AMERICA,     )
                             )

4            Plaintiff,    )
                             )

5              vs.       )   Cause No. 4:19CR-998JAR
                             )

6 LAKISHA S. SMITH,         )
                             )

7            Defendant.    )
_____

8                SENTENCING HEARING

9      **BEFORE THE HONORABLE JOHN A. ROSS**
        **UNITED STATES DISTRICT JUDGE**

10                JUNE 17, 2021

11 _____

12                <u>APPEARANCES</u>

13 <u>For United States</u>:
Ms. Jennifer Roy

14 Office of U.S. Attorney
111 South 10th Street

15 St. Louis, MO 63102

16

17 <u>For Defendant:</u>
Ms. Susan McGraugh

18 St. Louis University School of Law
100 N. Tucker Blvd., Suite 704

19 St. Louis, MO 63101

20

21

22      <u>Stenographically Reported and Produced by</u>:
        Lisa M. Paczkowski, CCR, CSR, RPR

23           Official Court Reporter
        United States District Court

24           111 South 10th Street
          St. Louis, MO 63102

25            (314)244-7985

1    <u>JUNE 17, 2021</u>

2    (At 10:15 a.m., the proceedings returned to open court.)

3              THE COURT:  We are here and on the record in the

4    case of the United States versus Lakisha Smith.  It is cause

5    number 4:19CR-998.  The case is set here today for

6    sentencing.  The Defendant previously appeared in this court

7    on March 11th of this year 2021, and she entered a plea of

8    guilty to two counts of a six count indictment.  She entered

9    pleas of guilty to the charges in Counts 2 and 5.  Each count

10   charged her with aiding and abetting the filing of false

11   income tax returns.

12             As I indicated, the case was set here this morning

13   for 10 o'clock.  It is 10:15.  The Defendant has not

14   appeared.  Defendant's counsel, Sue McGraugh, is here.  The

15   United States is appearing by Assistant United States

16   Attorney Jennifer Roy.

17             Ms. McGraugh, you indicated before we went on the

18   record that you had a situation.  So I want to give you an

19   opportunity to tell me whatever you want to tell me with

20   regard to that situation.

21             MS. MCGRAUGH:  Thank you, Judge Ross.  May I remove

22   my mask while I speak?

23             THE COURT:  You may.  Yes, when you are speaking

24   you can definitely take your mask off.

25             MS. MCGRAUGH:  Your Honor, my client is downstairs.

1    She was here relatively promptly.  Her 20 year old daughter

2    is here.  She didn't have an ID nor does my client.  They

3    have given my client permission to come up here; however, she

4    will not come up without her daughter, and I wondered if

5    there was a way to communicate with the Marshals to allow the

6    daughter to come up.

7         They said the only way they will allow her daughter

8    to come up is if Ms. Roy brings her up.  But I don't want to

9    impose on Ms. Roy.  She doesn't know her either.  I'm in a

10   little -- and I don't have a solution.

11        THE COURT:  Okay.  We will go off-the-record for

12   just a moment.

13      (An off-the-record conversation took place.  At 10:14

14   a.m., the proceedings returned to open court.)

15        THE COURT:  We are here and on the record in the

16   case of the United States versus Lakisha Smith.  It is cause

17   number 4:19CR-998.  The record should reflect that the

18   Defendant appears in person and with counsel Sue McGraugh.

19   The United States appears by Assistant United States Attorney

20   Jennifer Roy.

21        The Defendant previously appeared in this court on

22   March 11th of this year 2021.  At that time, she appeared on

23   a six count indictment.  Pursuant to a written guilty plea

24   agreement, we deferred action on Counts 1, 3, 4, and 6,

25   proceeded on Counts 2 and 5.  Ms. Smith entered pleas of

1  guilty to the charges in Counts 2 and 5 of aiding and

2  abetting the filing of false income tax returns.  The Court

3  ordered a presentence report to be prepared.  We are here

4  today for sentencing.

5       Ms. McGraugh, you are here today with your client

6  presenting her for sentencing; is that correct?

7       MS. MCGRAUGH:  Yes, I am, your Honor.

8       THE COURT:  And I do want to say at the outset,

9  when you are speaking, if you will lower your mask it will

10  help me hear, the court reporter hear.  I want to make sure I

11  hear everything that's being said.

12       MS. MCGRAUGH:  Yes.

13       THE COURT:  Ms. Smith, you can stay right there,

14  but Ms. Smith, do you understand you are here today for

15  sentencing; is that correct?

16       THE DEFENDANT:  Yes, your Honor.

17       THE COURT:  And it is important that you keep your

18  voice up, speak into that microphone.  Again, I have to hear

19  what you say.  It is important the court reporter hears as

20  well.

21       THE DEFENDANT:  Yes, sir.

22       THE COURT:  So again, you are here today for

23  sentencing; is that correct?

24       THE DEFENDANT:  Yes, sir.

25       THE COURT:  And before we proceed with sentencing,

1   I have some questions that I need to ask of you.  I want you

2   to listen carefully to what I say.  If there anything you

3   don't understand, I want you to stop me and ask me to repeat

4   it or explain it to you, or you can ask for time to talk to

5   your attorney.  But I want to make sure that you understand

6   what's going on here today, all right.

7               THE DEFENDANT:  Yes, sir.

8               THE COURT:  It is also necessary for you to give

9   full, complete, and truthful answers to my questions.  Your

10  answers are under oath, which means under penalty of perjury;

11  do you understand that?

12              THE DEFENDANT:  Yes, sir.

13              THE COURT:  And at this time, if you will raise

14  your right hand, I'll ask the Clerk to administer the oath.

15                       LAKISHA S. SMITH,

16  being produced and sworn, testified as follows:

17  Q.   (By the Court)  Will you state your full name for the

18  record?

19  A.   Lakisha Smith.

20  Q.   And your date of birth?

21  A.   September 9, 1981.

22  Q.   Ms. Smith, again do you understand you are here today

23  for sentencing; is that correct?

24  A.   Yes, sir.

25  Q.   Here today, is your mind clear, do you know exactly what

1  you are doing?

2  A.   Yes, sir.

3  Q.   Are you under the influence of any drugs or alcohol, or

4  taking any medication of any kind that would affect your

5  ability to understand this proceeding?

6  A.   No, sir.

7  Q.   So again, you are telling me your mind is clear.  You

8  understand everything that's going on here today?

9  A.   Yes, sir.

10  Q.   And you heard me go through the history of the case.  Do

11  you recall appearing, you did so by Zoom remotely on

12  March 11th of this year.  You entered pleas of guilty to

13  those two counts in the indictment, Counts 2 and 5, each

14  count charged you with Aiding and Abetting the Filing of

15  False Income Tax Returns; is that correct?

16  A.   That's correct.

17  Q.   At the time that you entered those pleas of guilty, did

18  you do so freely and voluntarily, because you were, in fact,

19  guilty of each of those charges?

20  A.   Yes, your Honor.

21  Q.   You were with Ms. McGraugh at that time.  She has

22  represented you pretty much throughout this case.  I just

23  want to ask you generally, have you had enough time to talk

24  to her about the case?

25  A.   Yes, your Honor.

1    Q.   Has she answered all of your questions?

2    A.   Yes, your Honor.

3    Q.   Has she done everything you have asked her to do in the

4    case.  It really is, it is a simple question.  Has she done

5    everything you have asked her to do in this case?

6    A.   Yes, your Honor.

7    Q.   Are you satisfied with her services?

8    A.   Yes, I'm satisfied with her services.

9    Q.   I talked to you at the time of the plea a little bit

10   about what would happen here today at sentencing.  I want to

11   go over that with you again.  The first thing that the Court

12   is required to do is determine under the Sentencing

13   Guidelines what the guideline range of punishment is in your

14   case.  The way that I do that is by determining a total

15   offense level and a criminal history score and category.

16   That's based on any prior record of criminal convictions that

17   a person may have.  And from that, I get a guideline range of

18   punishment.

19          The guideline range is advisory, which means it

20   gives guidance to the Court, but the Court is not required to

21   follow it.  After I do that, I'll consider certain factors

22   under a section of the statute.  It is 18 U.S.C. Section

23   3553(a).  There are a series of factors that the Court will

24   consider.  They include the nature and circumstances of the

25   offenses that you have pled guilty to.  The history and

1  characteristics of you as the Defendant.  There are a series

2  of other factors that the Court will consider.  I'll also

3  consider anything you and your attorney want to tell me,

4  anything that the Government wants to tell me.  I'll consider

5  the terms of the plea agreement.  Do you understand all of

6  that, Ms. Smith?

7  A.   Yes, sir.

8           THE COURT:  And you know to assist the Court, I

9  ordered that a presentence report be prepared.  Counsel, Ms.

10  McGraugh, there were disclosure copies of the report.  Then a

11  final presentence report.  You received those reports,

12  provided access to the reports to Ms. Smith, went over them

13  with her, answered any questions she may have had; is that

14  correct?

15           MS. MCGRAUGH:  That's correct, your Honor.

16           THE COURT:  And I noted for the record that there

17  were no objections filed to the presentence report; is that

18  correct?

19           MS. MCGRAUGH:  That's correct, your Honor.

20           THE COURT:  I believe it was yesterday that a

21  letter was brought to the courthouse and filed.  You had an

22  opportunity to review the letter; is that correct, Ms.

23  McGraugh, and just for the record, it is Document Number 78.

24  It was a letter that appears to have been written by

25  Ms. Smith.  You have read through that; is that correct?

1          MS. MCGRAUGH:  Yes, your Honor, after it was filed.

2          THE COURT:  Okay.  And again, that was just

3    recently filed.  In that letter, it has some other

4    information, some of which the Court will consider when we

5    get to the sentencing.  It also raises a couple of issues

6    with regard to certain paragraphs in the presentence report.

7    Have you gone over that with Ms. Smith, and discussed it with

8    her?

9          MS. MCGRAUGH:  I have not discussed the content of

10   the letter with Ms. Smith except to tell her that I did

11   receive the letter.

12         THE COURT:  Okay.  Again, it makes some references

13   to a couple of the paragraphs.  Some of it I had a little bit

14   of a difficult time understanding.  I'm going to give Ms.

15   Smith an opportunity to tell me what she wants to tell me

16   about it.  What is set out there does not constitute a legal

17   objection, and you agree; is that correct?

18         MS. MCGRAUGH:  I agree, your Honor.

19         THE COURT:  Okay.  Again there were no objections

20   previously filed.  I want to ask you here today on behalf of

21   Ms. Smith, do you know of any legal objection to anything in

22   the final presentence report?

23         MS. MCGRAUGH:  I do not, your Honor, although I

24   know Ms. Smith would disagree with that statement.

25         THE COURT:  Okay.

1       MS. MCGRAUGH:  And I think the Court has the

2   contents of that in front of him.

3       THE COURT:  Okay.  Ms. Smith, I want to say this to

4   you, again ordinarily when someone is represented by an

5   attorney, I would not necessarily consider a pro se filing.

6   I'm telling you I am considering what you have filed.  I have

7   read what you have filed.  I understand, I believe, what you

8   have in your letter.  It doesn't constitute a legal objection

9   to anything in the presentence report, but if there is

10  something you want to tell me about those paragraphs that you

11  talk about, go ahead.

12      THE DEFENDANT:  Your Honor, I was addressing the

13  Court with that concern, because in 2015, I was put on

14  probation, and I was detained by a traffic stop for my temp

15  tags.  In the traffic stop, they stopped me, and I didn't

16  have a driver's license, and they searched my car, and there

17  was some items in my car that they said I didn't have a

18  receipt for.  So they confiscated the items.

19      The officer wrote a report.  I went to jail for 20

20  minutes.  The officer wrote a report to the Probation Officer

21  and said that the tags off the merchandise looked like they

22  had come from another state, and that I had violated the

23  probation and went to Atlanta.  They did an investigation,

24  and they threw the charges out, but every time I get in

25  trouble, they say the Atlanta thing keeps coming up and

1   harboring over me again.  They charged me just this year when

2   I got put on intense probation for this.  I'm sorry, your

3   Honor, I'm a little nervous.  What I got down and put on

4   intense house --

5              THE COURT:  You have to talk slow, all right.

6              THE DEFENDANT:  Yes, sir.  When I got put on

7   intense house arrest, they brought back up the same Atlanta

8   thing again, and for five year in 2015, and they used it

9   against me.  And it's like they continue to keep using things

10  against me from my past that's double jeopardizing me, and it

11  is hurting me on this case, you know, it hindered me on my

12  case because.

13             THE COURT:  Ms. Smith, I want to say to you there

14  is nothing in this presentence report about anything in

15  Atlanta that I'm going to take as being a negative, or it

16  doesn't affect the point calculation.  It doesn't affect any

17  of those things.  So to the extent that you are concerned

18  about what happened in Atlanta, or that that's being held

19  against you, I'm telling you there is nothing about anything

20  related to Atlanta that I'm going to hold against you, or

21  that the presentence report is holding against you.

22             So all I can say to you is I understand your

23  concern.  I'm just telling you there is nothing in there as

24  it relates to anything in Atlanta that I'm going to hold

25  against you in any way.

1          THE DEFENDANT:  Yes, sir.

2          THE COURT:  So is there anything else you want to

3    tell me?

4          THE DEFENDANT:  No, sir.

5          THE COURT:  I do understand you raise an issue also

6    in the letter about the fact that you were not on supervision

7    at the time of the indictment, and there is a paragraph that

8    discusses -- and that's Paragraph 67 that you committed the

9    instant offense while under a criminal justice sentence.

10   What that's referring to, Ms. Smith, is this, that at the

11   time that the offenses in this indictment were alleged it is

12   the time period 2013 to 2016, you were under a criminal

13   justice sentence.  That is the sentence from cause number

14   13SL-CR2550 out of the Circuit Court of St. Louis County.

15          So that's what that's referring to just so that you

16   understand.  I want to make sure you understand that; do you

17   understand?

18          THE DEFENDANT:  Yeah, I understand.  I didn't get

19   an understanding, because I thought it was at the time that I

20   had got indicted with.

21          THE COURT:  No, it has nothing to do with the time

22   of the indictment.  It was the time that you were committing

23   these offenses, all right.

24          THE DEFENDANT:  Yes, sir.

25          THE COURT:  So anything else you want to tell me

1    with regard to objections to anything in the presentence

2    report?

3                    THE DEFENDANT:  No, sir.

4                    THE COURT:  Okay.  All right, let me come back to

5    you, Ms. McGraugh.  Again, do you have any legal objection to

6    anything the final presentence report?

7                    MS. MCGRAUGH:  I do not, your Honor.

8                    THE COURT:  Ms. Roy, on behalf of the Government,

9    does the Government have any objection to anything in the

10   final presentence report?

11                   MS. ROY:  No, your Honor.

12                   THE COURT:  To the extent that there were pro se

13   objections filed to the presentence report, the Court is

14   going to overrule those objections.  They are not legal

15   objections.  They do not affect, in the Court's view, the

16   guideline calculations.  The Court is going to adopt the

17   final presentence report as its findings of fact and legal

18   conclusions in this case.  Specifically its findings of fact

19   and legal conclusions with regard to the advisory guidelines.

20   Based on the evidence and the presentence report, the Court

21   finds that the total offense level in this case is an offense

22   level 15.  Ms. Smith has a criminal history score of 10, puts

23   her in a criminal history category of five.  It gives us a

24   guideline range of punishment of 37 to 46 months in the

25   Bureau of Prisons.

1          And Ms. McGraugh, do you agree that those are the

2     guideline calculations; is that correct?

3               MS. MCGRAUGH:  That's correct, your Honor.

4               THE COURT:  And Ms. Smith, do you understand that

5     those are the guideline calculations 37 to 46 months in

6     prison?

7               THE DEFENDANT:  Yes, sir.

8               THE COURT:  And Ms. Roy, the Government agrees as

9     well?

10              MS. ROY:  Yes, your Honor.

11              THE COURT:  It is the procedure of the Court

12    pursuant to Local Rule to hold a closed hearing in every plea

13    and every sentencing hearing.  This portion of the proceeding

14    is unfortunately not public.  The records are sealed.

15              I'm going to ask those of you who are observing if

16    you will just step outside for two or three minutes.  This

17    part of the proceeding is very brief, but I'm going to ask

18    that you to step outside of the courtroom for just a couple

19    of minutes.  So all of you observing, if you will step

20    outside for just a couple minutes.

21              (Pursuant to Local Rule 13.05, a bench conference

22    was held on the record and placed under seal.  The following

23    proceedings continued in open court.)

24              THE COURT:  We will let everybody get back in and

25    get situated, and then we will proceed.  Okay, thank you for

1  your understanding.  One other issue that I wanted to take up

2  is there was an amount of restitution that was determined in

3  the presentence report as to Counts 2 and 5.  The amount of

4  restitution as determined in the presentence report was

5  $10,416.  And again, Ms. McGraugh, on behalf of Ms. Smith,

6  any objection to that amount?

7        MS. MCGRAUGH:  We do not have any objection to the

8  amount, your Honor.  We are, however, asking that restitution

9  be waived, because she is incarcerated.

10       THE COURT:  Okay.  All right, do you understand

11 that that was the restitution amount as to those two counts,

12 Ms. Smith.  It is $10,416.  Do you understand that; is that

13 correct?

14       THE DEFENDANT:  Yes, sir.

15       THE COURT:  And the Government agrees as well?

16       MS. ROY:  Yes, your Honor.

17       THE COURT:  And that's the amount of restitution

18 that the Government is seeking, correct?

19       MS. ROY:  That is, your Honor.

20       THE COURT:  Okay.  With that, Ms. McGraugh, I know

21 you had filed a lengthy sentencing memorandum in the case.  I

22 have had an opportunity to review that.  As I indicated,

23 there are things in Ms. Smith's letter that I viewed as

24 related to the appropriate sentence in the case.  I want to

25 give you a chance to tell me anything you want to tell me

1    with regard to sentencing considerations.  You can do it

2    there from the counsel table, if you speak up, or you can

3    come up here to the podium.  Where ever you are comfortable.

4            MS. MCGRAUGH:  I prefer the podium, your Honor.

5            THE COURT:  That's fine.

6            MS. MCGRAUGH:  Your Honor, thank you for giving me

7    an opportunity to tell you about Lakisha Smith.  As we made

8    clear in our sentencing memorandum, we are requesting the

9    Court either grant Ms. Smith probation or a year and a day

10   sentence.  Should the Court determine that the proper

11   sentence is within the guidelines, we are requesting that the

12   Court sentence Ms. Smith to the lowest sentence possible

13   under the guidelines which is 37 months.

14           Sufficient but not greater than necessary, and your

15   Honor, that's the question that needs to be answered today is

16   what sentence is sufficient to meet the ends of justice, but

17   not more than necessary.  The ends need to accomplish a

18   legitimate goal of punishment, your Honor, and to answer that

19   the Court needs to determine what it is that it wishes to

20   accomplish.  There is several legitimate reasons for

21   punishment, deterrence, retribution, public safety, and to

22   prevent recidivism, because a sentence that oversteps those

23   legitimate bounds of punishment is unlawful and cruel.

24           I know that your Honor has read our sentencing

25   memo, and in that memo we have attempted to help you get to

1    know Ms. Smith, and to see her as more than the offense that

2    is in front of you in this courtroom.  I hope you saw, as we

3    see, that Ms. Smith had what could have been insurmountable

4    barriers to success in her life.  Rape, isolation, domestic

5    violence all played a major role in her youth and continued

6    through adulthood.  But I hope you can also see what we saw

7    outside of the trauma created those events, and what we see

8    is resilience.

9           Your Honor, to see Ms. Smith only as a criminal and

10   not as a hard worker, a daughter, and a beloved mother turns

11   all of us in this well of the courtroom into what exactly the

12   community has accused us of being, which are cogs in a

13   machine that would just see Ms. Smith as another criminal,

14   and turn her out of the system.  And I hope that we, and I

15   mean all of us in the well of the courtroom, are better than

16   that.

17          So back to the question at hand.  What ends do we

18   seek when we talk about her sentence.  What do we want the

19   outcome to be.  And here, your Honor, we need to expand what

20   the outcome is to beyond Ms. Smith.  Because Ms. Smith, as

21   the Court knows, has three daughters, two of whom have not

22   reached the age of majority, and any sentence that she

23   receives is going to have a direct effect on those children.

24   And you don't need to take my word for it, Judge.  I'm not

25   here speaking antidotally.  That's why we provided

1  information from the National Institute of Justice, the

2  United States National Institute of Justice that demonstrates

3  clearly the long lasting and detrimental effects that a

4  lengthy incarceration for Ms. Smith is going to have on her

5  family, especially on her children.

6         And we have to wonder, your Honor, is that the

7  result we seek.  In the end, is that what justice demands.

8  Ms. Smith is responsible for this situation.  Ms. Smith would

9  be the first person to tell you that.  She entered a plea of

10  guilty.  She has presented herself to this court for

11  punishment.  She knows that she is going to get probably a

12  prison sentence, and she is accepting of that.  The only

13  thing she has consistently told myself and our social worker

14  Lauren Chote is what is this going to do to the kids.  And we

15  are not saying that the Court would be responsible for what

16  happens to the children.  She is well aware that her behavior

17  has harmed her children.  But it is only at this point,

18  Judge, that we can mitigate the harm on those children.

19         Having her accept what happened, knowing that the

20  Court is not responsible to the offense, does not give the

21  rest of us sanctuary from the long-lasting effects of the

22  separation from her children, and the fact that they are

23  going to suffer trauma and other effects, and I think you

24  have read some of those effects, incarceration, mental health

25  problems, physical health programs, earning problems, if she

1    is given a lengthy incarceration.  And I say that especially

2    in the fact that they only learned their mother was going to

3    be sent to prison today within the last 24 hours, and I'm

4    concerned about compounding that trauma and asking them to

5    endure more trauma on top of it.

6            In summary, Judge Ross, what happens in this

7    courtroom today is going to determine who we collectively are

8    seen by the community.  Are we what the community thinks we

9    are, or whether we are capable of listening to our better

10   angels, and seeing Ms. Smith not as a felon and a criminal

11   that comes in front of this courtroom, but as a whole person

12   with her relationships to the community and her relationships

13   to her family.

14           I think that Ms. Smith is more than this offense

15   and doesn't deserve to be a cog in the machine, and I hope

16   that everybody in this courtroom sees that as well.  Thank

17   you for your time, your Honor.

18           THE COURT:  Thank you, Ms. McGraugh.  Ms. Smith,

19   I'm going to come back to you to give you an opportunity to

20   tell me anything you want to tell me, but let me go to you,

21   Ms. Roy, and again you are fine if you want to stay there, or

22   you can come to the podium, just keep your voice up, if you

23   would.

24           MS. ROY:  Thank you, your Honor.  Your Honor, the

25   Government has filed a response to the Defendant's sentencing

1    memorandum and also requests for a downward departure and

2    downward variance.  And I addressed each of those requests

3    individually in my response.  And the Government is asking

4    for a guideline sentence in this case between 37 to 46

5    months.

6              And from the outset, I do want to note that this

7    could have been a different conversation.  The Defendant

8    received all three points for her acceptance of

9    responsibility in her -- at the time of her guilty plea.  The

10   Government considered, but decided coming in here today, that

11   we would not withdraw that third point.  That would have been

12   available to us based on her lack of compliance throughout

13   the course of her supervision while on Pretrial release.

14   That would have changed this conversation to a level 16,

15   criminal history category of 5, and range of 41 to 51 months.

16             That being said, the Defendant has a lengthy

17   criminal history.  It spanned two decades.  She has several

18   pending cases as we sit here today.  She was under -- well,

19   she committed this crime while she was under the sentence in

20   a prior case, and the Government notes that in February when

21   we were before the Magistrate Court for the Defendant's bond

22   hearing, that we recommended that she be remanded.  The

23   Magistrate determined that she would be placed on house

24   arrest and under electronic monitoring.

25             And the reason we asked for remand at that point

1    was because of her behavior again while on Pretrial release,

2    and while bond is generally a gift, and it should have been a

3    gift to Ms. Smith to show her characteristics, her acceptance

4    of responsibility, her respect for the law, the deterrent

5    effect of what was going on here, her ability to be

6    rehabilitated, as opposed to recidivist.

7            Instead what it did was it provided a window to Ms.

8    Smith's personal history and characteristics that showed that

9    she had a total disrespect for the law.  She continued to

10   smoke marijuana while she was on Pretrial supervision.  Not

11   only that, she continued to smoke marijuana while on Pretrial

12   supervision while she was operating her SUV driving her car.

13   She was rolling cigarettes.  She was smoking those marijuana

14   cigarettes while she was driving.  She was drinking alcohol,

15   and we saw all of this.  We saw it play out on Facebook.  She

16   was Facebook live video streaming her behavior.

17           Often at times that behavior included her small

18   child in the backseat of her car while she was smoking

19   marijuana.  There were other passengers in the car while this

20   was going on.  There was an unauthorized business being

21   conducted by the Defendant that Pretrial Services was not

22   aware of.  And so all of this was going on while she was

23   under the Court ordered supervision; and again, it would have

24   been an opportunity for her to show us what her true

25   interests here, intentions were.

1          So in a sense, she was committing new crimes again

2     while she was under supervision.  We gave her opportunities

3     while she was under supervision as well.  She was given

4     opportunities for therapy, for counseling, for drug

5     treatment, and on neither occasion -- well, she was ordered

6     actually to go to inpatient treatment.  On the first

7     occasion, she walked in, decided she didn't want to stay due

8     to I believe her reasons were that it was not clean, and that

9     people were sick there.  She left without telling Pretrial

10    Services the nature of how she was going to travel.  That was

11    a violation as well, and then never went back.

12         The night before, she was supposed to return to her

13    inpatient treatment, she reported that her daughter was ill.

14    She had to take her to the hospital, and then Ms. Smith just

15    never reported again to her inpatient treatment program.  So

16    again, she was given several opportunities to comply, and to

17    accept treatment, and she didn't want either one of them.

18         Judge, I know Ms. McGraugh mentioned her family

19    ties and responsibilities.  Again, the Government has laid

20    out and mentioned the -- I don't think I need to belabor the

21    point.  That is a very unfortunately an atypical -- or this

22    is not an atypical situation that she is a single parent

23    going into an incarceration situation.  She hasn't provided

24    any kind of testimony or evidence that suggests that it rises

25    above that.  That it is such a remarkable case that a

1   downward departure or a variance would be warranted in this

2   case.

3          The Government's position is that under 3553,

4   Defendant's history and characteristics, her lengthy history

5   of criminal history, the characteristics we just discussed,

6   the issue of deterrence of the -- and frankly, the safety of

7   the community from the Defendant's future crimes.  She has

8   shown that she is noncompliant while under supervision, and

9   that she is likely to reoffend.  There is an indifference to

10  the safety and wellbeing of others.  I think that has been

11  proven as well.

12         I will also note that I did have a conversation

13  with Pretrial Services after I again looked at Ms. Smith's

14  Facebook page as recently as several days ago.  It is up

15  there today as well.  That Ms. Smith did post another

16  Facebook live video in May.  I believe it was May 21st of her

17  driving her car to what turns out to be some kind of a

18  doctor's appointment that she was ordered not to drive her

19  vehicle.  I believe we took her driver's license away.  I

20  think, and that may be why she doesn't have her ID here

21  today.  Judge Mensah ordered that she not drive.

22         There is also video posted on there of Ms. Smith

23  operating a business out of her home.  Again, this was a

24  business that was not authorized.  She is selling clothing.

25  I believe she is also fixing people's hair as well, and

1   potentially holding tutorials on how to do that as well.

2   Those have also been Facebook live, and they are all over her

3   Facebook page which is a public Facebook page.

4           So my understanding is that Pretrial may be

5   actually filing another violation that hasn't been filed at

6   this point.  But that was up there today, and it has been

7   throughout again since February when we last appeared before

8   this Court -- or before the Magistrate Court.  So for all of

9   these reasons, the Government is asking for a sentence within

10  the guidelines.  We don't believe that there is any reason to

11  depart or to vary below the recommended guideline sentence of

12  37 to 46 months, thank you.

13          THE COURT:  Okay.  Thank you, Ms. Roy.  Ms. Smith,

14  I want to give you an opportunity, if there is anything you

15  want to tell me, this is the time to do it.  Ms. Smith, I'm

16  going to ask you to stay right there.  Thank you, just keep

17  your voice up, if you would.

18          THE DEFENDANT:  So in conscience, your Honor, first

19  I wanted to address some of the concerns that were brought

20  against me.  I don't know if I'm allowed to from the

21  prosecutor, but I want to address some of those concerns.

22          As far as the business that I was running, the

23  business opened up in 2019.  It was addressed with Pretrial

24  the day that I turned myself in of December 11, 2019.  I

25  opened the business up in August of 2019.  When I had got on

1   Pretrial, the business wasn't up and running, because I had

2   just opened it up.  So in December, I wasn't running a

3   business.

4          So when things got hard for me, I started running

5   my business, because I got permission saying that it was okay

6   because I'm on Pretrial that I follow the rules, and do

7   everything that I'm supposed to be doing, letting them know

8   what's going on.  So I started selling my clothing from my

9   clothing line, ordered it from distributors, selling

10  clothing.  Yes, I do hair.  It was addressed at Pretrial when

11  I turned myself in.

12          THE COURT:  I'll tell you that I'm not concerned

13  about those issues.  Again, I understand that given the

14  nature of the offense that you pled guilty to, there were

15  some concerns that Pretrial had.  There were concerns that

16  the Government had.  I'm telling you that the fact that you

17  may have been running a business doesn't bother me in any

18  way.  That just doesn't bother me in any way so.

19          THE DEFENDANT:  So in retrospect to everything

20  that's going on, your Honor.  Yes, over the course of time in

21  my past I have -- give me a second -- I have made mistakes in

22  my past.  Yes, I have broke the law in my past.  Within the

23  last five years, I have been trying to clean my past up.  So

24  yes, I have a lot of convictions out there that's prior to

25  things that I have went through in my past.  Yes that there

1   are still cases that are open that I'm trying to clear up

2   from my past.  It takes time.  Nothing happens overnight.  I

3   have been trying.

4           Anything that goes wrong, or if something comes up,

5   even though I don't want to face it, I go face it.  I turn

6   myself in.  I try to do the right thing.  On Pretrial, it was

7   hard for me.  I tried my best to do the right thing.  I tried

8   really hard to please Jameka Taylor.  Yes, I messed up with

9   this drug problem.  Yes, I can't -- yes, I have a drug

10  problem.  I'm self-medicating myself from a lot of things

11  that I have been through.  I try my best to go get help.  I

12  did try treatment, and I went there.  It wasn't that I wanted

13  to leave treatment.  It wasn't -- it was they were infected

14  with a virus.  Everyone was sick.

15          I got permission to leave.  I was going back.  I

16  asked to go back.  Months went past.  I was self-medicating

17  my kids and myself, because I was on house arrest, and it was

18  hard.  I couldn't get permission to do certain things.  So I

19  self-medicated.  My baby got sick.  It's not my fault.  I

20  can't force no one to get sick.  I rushed her to the

21  emergency room.  They didn't even give me permission.  Even

22  though I know I broke the law, I left and took my baby to the

23  hospital, because my baby was sick, and I took her to the

24  emergency room and got paperwork from these people.  They

25  quarantined my baby and asked me to stop self-medicating.  I

1   shouldn't bring her.  I explained to them people I'm on house

2   arrest.  It is hard for me right now.  I don't have a soul to

3   help me with my children.  So I try to do the best I can, and

4   I try to not disappoint the Court and not try to disappoint

5   Jameka in the same process and still trying to be a mother,

6   because I have been doing this by myself for 23 years.

7           So I tried my best to please you, and I'm sorry if

8   I let the Court down.  I'm sorry if I made mistakes in the

9   process of trying to get myself right.  I apologize for my

10  mistakes.  I apologize to the Court for having to be here

11  today.  I apologize to the people that I hurt.  I mostly

12  apologize to my kids and some of the most of my mistakes that

13  I have made in life --

14          THE COURT:  Take your time.

15          THE DEFENDANT:  And I would ask you whatever your

16  decision may be, sir, I am human, and all I want to do is try

17  to live right for this community, but I haven't had the

18  opportunity, and I would -- yes, I have made mistakes.  I'll

19  try to clear them up, if you see me to be lenient with

20  whatever you decide with me, sir.  I'll be thankful for that

21  just to make it back home to my children.

22          THE COURT:  Okay.  Ms. Smith, let me say this,

23  obviously, I recognize, it is pointed out in the presentence

24  report, that you had a very difficult childhood, upbringing.

25  You dealt with things that I can't imagine how difficult they

1    had to be for you, and I recognize you have had a lot of

2    challenges, things to deal with.  I believe everything that

3    you are saying to me here today.

4         You've dealt with drug issues, some mental health

5    issues.  It has been clear to me from the first time I saw

6    you at the time of the plea that you need help.  You really

7    do.  We talked about that at the time of the plea, and I was

8    hopeful that we could get you in an inpatient drug treatment

9    program.  You said you that's what you wanted to do.  We

10   tried to do that.  Pretrial tried to do that.  I told you

11   then that it was very, very important that you not violate

12   any of the conditions of your bond.  By all rights, I should

13   have ordered that you be taken into custody before today,

14   because you did continue to violate the conditions of your

15   bond, and that's unfortunate.  That's all I can say to you.

16   It doesn't change the fact that I recognize you desperately

17   need some help dealing with your drug problem.  Again, I

18   think your mental health issues, you need help with dealing

19   with those things.

20        So I have given consideration to all of these

21   factors, all of the 3553(a) factors, all of the just the

22   mitigating circumstances in your case, which I think there

23   are a number of them.  There are also some bad things.  As

24   you know, you have a lengthy criminal history.  That is sort

25   of a continuing pattern of criminal conduct.  I have to say

1    to you, and I'd say to the Government, that I don't think

2    that the type of offenses that you have been convicted of in

3    the past are the most serious in my mind, but they are

4    certainly indicative of a course of criminal conduct.  And

5    again, I have considered those things.  I have obviously

6    considered the nature of the offense, the violations that

7    occurred on Pretrial release.  It was an opportunity for you

8    to prove that you could be in the community and comply with

9    the requirements of the law, and unfortunately, you weren't

10   able.  In some instances, you just didn't do that.

11           I understand there were extenuating circumstances

12   too, but when I give consideration to all of these factors,

13   the Court believes that a slight downward variance from the

14   guidelines to a sentence of 32 months on each of the counts

15   to run concurrent is the appropriate sentence in the case.

16   It is sufficient, but not greater than necessary, to meet the

17   statutory sentencing objectives.  I am going to order a

18   number of conditions.  I'm hoping that we can get you some

19   help so that you can return to your family and be in a better

20   position to care for them and care for yourself.

21           That being said, Ms. McGraugh, do you know of any

22   legal objection to the Court imposing the sentence as I have

23   indicated?

24           MS. MCGRAUGH:  I do not, your Honor.

25           THE COURT:  Ms. Roy, does the Government know of

1  any legal objection to the Court imposing the sentence as I

2  have indicated?

3          MR. ROY:  No, your Honor.

4          THE COURT:  Then no legal objection having been

5  shown why judgment and sentence should not now be pronounced,

6  it is then the order, sentence, and judgment of this Court

7  that pursuant to the Sentencing Reform Act of 1984, the

8  provisions of 18 U.S.C. Section 3553(a), it is the judgment

9  of the Court that the Defendant, Lakisha Smith, is hereby

10 committed to the custody of the Bureau of Prisons to be

11 imprisoned for an aggregate term of 32 months.  That term

12 will be 32 months on each of Counts 2 and 5 with those terms

13 to run concurrently.

14          While in the custody of the Bureau of Prisons, the

15 Court is going to recommend that you be evaluated for

16 participation in a residential drug abuse program.  The

17 Federal Bureau of Prisons has a great program.  Ms. McGraugh

18 can explain some of the things about that program and the

19 benefits of the program.  It is a great program, and I think

20 it can be a huge help to you.

21          I'll also recommend that you be evaluated for any

22 available mental health treatment program, and any

23 occupational or educational program that you have an interest

24 in.  You are a bright talented person.  You can take

25 advantage of these programs, and as I say, hopefully return

1    to your family in a much better position.

2           With regard to placement, Ms. McGraugh, do you have

3    a request?

4           MS. MCGRAUGH:  We are requesting that Ms. Smith be

5    placed within 90 miles of St. Louis, your Honor, to

6    facilitate her family visiting.

7           THE COURT:  The Court will include as part of its

8    final judgment that you be considered for placement in a

9    facility as close as possible to the St. Louis area that has

10   a residential drug abuse, drug treatment program.  I think it

11   is imperative, absolutely imperative that Ms. Smith get that

12   drug treatment.  So I will include that as part of the final

13   judgment.

14          Upon release from imprisonment, the Court will

15   order that you be placed on supervised release for a term of

16   one year on each of Counts 2 and 5 with those terms to run

17   concurrently.  The Court will order that you pay the

18   restitution in this matter.  It is a total amount of $10,416.

19   It is payable to the Internal Revenue Service.  Payments of

20   the restitution will be made to the Clerk of the Court for

21   transfer to the victim.  The Court will waive any interest

22   requirement.  The restitution is due immediately.  If you are

23   unable to pay the restitution in full, then I'll order that

24   you make payments in monthly installments of at least $100

25   with payments to commence no later than 30 days of the

1    commencement of your supervision.

2         The Court will order that you notify the U.S.

3    Attorney's Office of this District within 30 days of any

4    change of your mailing or residence address that occurs while

5    any portion of the restitution remains unpaid.  I will order

6    that you comply with the mandatory conditions of supervision

7    that are set out in the presentence report.  I'll also order

8    that you comply with the standard conditions that have been

9    adopted by this Court and comply with the following special

10   conditions.  Again, I'll order that you submit to substance

11   abuse testing.  That you participate in a substance abuse

12   treatment program.  I'll also order that you participate in a

13   mental health treatment program.  I'm absolutely convinced if

14   you get some mental health treatment, if you can get your

15   drug issues under control, you can do just fine.

16        The Court, because of the circumstances of the

17   offense, will impose the search condition.  The Court will

18   order that you provide the Probation Officer with access to

19   any requested financial information and authorize the release

20   of that financial information.  The Court will order that you

21   not incur new credit charges, or open additional lines of

22   credit without the approval of the Probation Office, and that

23   you apply all monies received from any anticipated or

24   unexpected financial gains to the outstanding Court ordered

25   financial obligation.  It will be a specific special

1   condition that you make those restitution payments that are

2   going to be made part of the judgment.

3           The Court does find that you do not have the

4   present ability to pay a fine.  The Court is required by

5   statute to order that you pay the mandatory special

6   assessment.  It is hundred dollars per count, or a total of

7   $200 in this case.

8           With regard to Counts 1, 3, 4, and 6 of the

9   indictment, pursuant to the plea agreement, is there a motion

10  on behalf of the Government, Ms. Roy?

11          MS. ROY:  Yes, your Honor.  Pursuant to the

12  negotiated plea agreement, we'd move to dismiss those counts

13  at this time.

14          THE COURT:  And pursuant to the plea agreement and

15  the motion of the Government, Counts 1, 3, 4, and 6 will be

16  ordered dismissed.  Before I go over with Ms. Smith her

17  appeal rights, anything further on behalf of the Defendant,

18  Ms. McGraugh?

19          MS. MCGRAUGH:  No, your Honor.

20          THE COURT:  Anything further on behalf of the

21  Government, Ms. Roy?

22          MS. ROY:  No, your Honor.

23          THE COURT:  Ms. Smith, the Court is required to

24  advise you that you may have the right to appeal your

25  conviction if you believe that your guilty plea was somehow

1   unlawful or involuntary, or if there was some other

2   fundamental defect in the proceeding.  Under some limited

3   circumstances, you might be able to appeal the sentence

4   that's been imposed here today.  You may have waived your

5   right to appeal that by virtue of the terms of the plea

6   agreement.  You will recall there was language in the plea

7   agreement with regard to your waiving certain appeal rights.

8           If you want to present any arguments to the Court

9   of Appeals, you can do so by filing a notice of appeal.  If

10  you request, the Clerk of the Court will file that notice of

11  appeal for you.  You can ask for leave to file the notice of

12  appeal as a poor person or in forma pauperis.  Under almost

13  all circumstances, the notice of appeal has to be filed

14  within 14 days of this date.  And Ms. McGraugh, I'll just ask

15  that you go over with Ms. Smith her appeal rights, file that

16  form pursuant to the Local Rule.

17          Ms. Smith, that brings us to the issue of you being

18  taken into custody here today.  Ms. Smith again, I talked to

19  you at the time of the plea about abiding by those conditions

20  of your Pretrial release.  Again, I know there were some

21  extraordinary circumstances.  In some instances, there were

22  reasons for the violations; but in some instance, there just

23  weren't.  So here today, I'm going to order that you be

24  remanded to the custody of the Marshals.  Anything further,

25  Ms. McGraugh?

1          MS. MCGRAUGH:  No, your Honor.

2          THE COURT:  Then again, Ms. Smith, good luck.  Take

3    advantage of those services.  You will be remanded to the

4    custody of the Marshals at this time.  If you have a

5    question, go ahead and ask me.

6          THE DEFENDANT:  I want to ask the question, can I

7    just give my kids a hug?

8          THE COURT:  I'm sorry, ma'am.  You will be remanded

9    into the custody of the Marshals at this time.

10   (The proceedings concluded at 10:08 a.m.)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          REPORTER'S CERTIFICATE

2

3           I, Lisa M. Paczkowski, Registered Professional

4    Reporter, do hereby certify that I am a duly appointed

5    Official Court Reporter for the United States District Court,

6    Eastern District of Missouri, and that the foregoing is a

7    true and accurate reproduction of requested proceedings had

8    in the matter of:

9    United States of America vs. Lakisha S. Smith

10          In the event copies are made of the transcript

11   herein, the court reporter takes no responsibility for

12   missing or damaged pages.

13          Dated this 26th day of July, 2021.

14

15

16          _____/s/  Lisa M. Paczkowski_____
            Lisa M. Paczkowski
17          Official Court Reporter
            United States District Court
18          Eastern District of Missouri

19

20

21

22

23

24

25